IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUAN VANEGAS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. JFM 07-52 |
| | * | |
| BOARD OF THE TRUSTEES OF THE | * | |
| HEALTH AND WELFARE FUND | * | |
| FOR THE INTERNATIONAL UNION | * | |
| OF OPERATING ENGINEERS, | * | |
| LOCAL 99 AND 99A, | * | |
| | * | |
| and | * | |
| | * | |
| GROUP HOSPITALIZATION AND | * | |
| MEDICAL SERVICES, INC. | * | |
| T/A CAREFIRST BLUECROSS | * | |
| BLUESHIELD | * | |
| | * | |
| Defendants. | * | |
| ***** | | |

**MEMORANDUM OPINION**

On May 19, 2008, I issued an opinion and order granting plaintiff Juan Vanegas's motion for summary judgment against defendant CareFirst, finding that plaintiff was entitled to medical benefits under CareFirst's group benefit plan, the Blue Ridge Plan. *See Vanegas v. Bd. of Trs. of Health & Welfare Fund*, No. 07-CV-52, 2008 WL 2115660, at *1 (D. Md. May 19, 2008). As the prevailing party, plaintiff has moved for an award of attorneys' fees, requesting that CareFirst pay for the work that plaintiff's attorney performed during the period of February 1, 2007 to June 30, 2008 in plaintiff's case against both CareFirst and the other defendant in this matter, the Local 99 Plan. (Pl.'s Mem. at 9.) For the reasons that follow, I will award plaintiff attorneys' fees, but only for the hours worked in his case against CareFirst for the period after I

-1-

granted the Local 99 Plan's motion for summary judgment on November 20, 2007.

I.

Under section 502 of the Employee Retirement Income Security Act of ("ERISA"), a "court in its discretion may allow a reasonable attorney's fee and costs to either party." 29 U.S.C. § 502(g)(1). The Fourth Circuit has adopted a five-factor test for determining whether attorneys' fees should be awarded under ERISA:

> (1) degree of the opposing party's culpability or bad faith; (2) ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Reinking v. Phila. Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990). This five-factor test is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees. *Quesinberry v. Life Ins. Co. of N. Am.*, 982 F.2d 1017, 1029 (4th Cir. 1993). No one of these factors is decisive, but rather they "simply constitute a nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of [ERISA]." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).

II.

Plaintiff argues that CareFirst should be responsible for his attorney's fees for the period beginning after CareFirst filed its answer to plaintiff's complaint on January 26, 2007, because CareFirst "[in bad faith] ignored the possibility that the treatment of Plaintiff's eye and facial conditions were not covered under the Local 99 Plan . . . ." (Pl.'s Reply at 3; Pl.'s Mem. at 9 n.1.) CareFirst's Blue Ridge Plan's "coordination of benefits" provision stated that it would

"reduce Allowable Expenses toward which benefits may be applied to the extent that payment for those Allowable Expenses is the responsibility of the Primary Health Plan." (*See* Pl.'s Mem. at 3.) I held in the opinion I issued on November 20, 2007 that "it was reasonable for CareFirst to determine that the Local 99 Plan is plaintiff's primary insurer, and thus to rescind payment of plaintiff's claims and request that he submit his claims to the Local 99 Plan." *See Vanegas v. Bd. of Trs. of Health & Welfare Fund*, No. 07-CV-52, 2007 WL 4180548, at *11 (D. Md. Nov. 20, 2007). I reached that conclusion because I found the issue of whether plaintiff's medical claims were covered by the Local 99 Plan to be a relatively close one.[1] For the same reason, I conclude that CareFirst did not act in bad faith in rescinding its payment for plaintiff's medical services based on the not unreasonable belief that the cost of those services would be covered by the Local 99 Plan.

I find, however, that after I upheld the Local 99 Plan's decision to deny plaintiff coverage, CareFirst did act in bad faith in arguing that the Blue Ridge Plan's work-related injury exclusion, Exclusion 10.10(h), applied to deny plaintiff coverage. As I held in my May 19, 2008 opinion, plaintiff clearly was not "required to be covered by a workers' compensation law" for the medical services he received between 2004 and 2006. *Vanegas*, No. 07-CV-52, 2008 WL 2115660, at *2-3. Furthermore, I explained in that opinion that the purpose of Exclusion 10.10(h) was to preclude coverage when "double recovery" with workers' compensation was a concern. *Id.* at *4. There was never any danger of "double recovery" with workers' compensation in the instant case, a point I had already made clear in my November 20, 2008

---

[1] It is worth noting that in December 2007 I found defendant Local 99 Plan's motion for attorneys' fees against plaintiff clearly without merit because the correctness of the Local 99 Plan's decision to deny coverage to plaintiff was not so self-evident as to make plaintiff's challenge of that decision a bad faith challenge. (*See* Order Denying Local 99 Plan's Motion for Attorneys' Fees, Dec. 5, 2007.)

opinion.[2] *Vanegas*, No. 07-CV-52, 2007 WL 4180548, at *12.

III.

Plaintiff also argues that because plaintiff's "only feasible litigation strategy" after CareFirst rescinded its payments was to assert claims against both the Local 99 Plan and CareFirst, CareFirst should also be responsible for attorneys' fees plaintiff incurred in connection with the Local 99 Plan litigation. (Pl.'s Reply at 6-7.) As purported support for this argument, plaintiff cites the Fourth Circuit for the following rule:

> [The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983)] explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon . . . . Rather, the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not. When successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter. When, however, all claims 'involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'

*Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (internal citations omitted). Plaintiff contends his claims against the Local 99 Plan and CareFirst "were inextricably intertwined, because this Court's decision concerning the Local 99 Plan necessarily affected the decision concerning CareFirst." (Pl.'s Reply at 7.) Relying on *Brodziak*, plaintiff thus submits that CareFirst should be responsible for his attorney's fees in both the CareFirst and Local 99 Plan litigation from February 1, 2007 to June 30, 2008. (*Id.*; Pl.'s Mem. at 9.)

I find, however, that plaintiff's claim against CareFirst and his claim against the Local 99

---

[2] As to the other four *Reinking* factors, I find that CareFirst has the ability to satisfy an award of attorneys' fees for the period following November 20, 2007; that such an award would deter other persons acting under similar circumstances; and that the relative merits of the parties' positions clearly favors plaintiff. *See Reinking*, 910 F.2d at 1217-18. I find, to the extent that it is relevant, that the fourth factor - whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself - weighs against plaintiff.

-4-

Plan were not "related" in the sense that *Brodziak* contemplates. In *Brodziak*, the court was concerned with the difficulty of dividing the attorneys' hours among plaintiff's closely related Title VII claims alleging that three of his supervisors had denied him training and overtime for discriminatory and retaliatory reasons. *Brodziak*, 145 F.3d at 196. In the instant case, by contrast, plaintiff does not - and cannot reasonably - argue that his claim that the Local 99 Plan abused its discretion in denying plaintiff coverage and his alternative claim that CareFirst must provide coverage were so related that dividing the attorney's hours between them would prove difficult.[3] Further, because, as I discussed *supra*, CareFirst did not act unreasonably in initially rescinding payments in accordance with the Blue Ridge Plan's "coordination of benefits" provision, to order it to pay plaintiff's attorney's fees in his litigation against the Local 99 Plan would be nonsensical and unjust.

For the foregoing reasons, I award plaintiff attorneys' fees, but only for the hours worked in his case against CareFirst for the period after I granted the Local 99 Plan's motion for summary judgment on November 20, 2007. Accordingly, I order plaintiff's attorney to file an affidavit listing his hours and rates for the period following November 20, 2007. A separate order to that effect is being entered herewith.

Date:   August 11, 2008            /s/_____
                                   J. Frederick Motz
                                   United States District Judge

---

[3] Indeed, the majority of the items listed in plaintiff's exhibit detailing plaintiff's attorney's hours and rates specify whether the work was for plaintiff's litigation against CareFirst or the Local 99 Plan. (*See* Pl.'s Mem. Ex. C.)